JONES v. ARMOUR FERTILIZER WORKS.

The petition, together with the exhibits, shows a right of recovery in the plaintiff, and the demurrer of the defendant was properly overruled.

June 17, 1916.

Complaint. Before Judge Thomas. Lowndes superior court. August 20, 1915.

*E. K. Wilcox,* for plaintiff in error.

*Woodward & Smith* and *Denmark & Griffin,* contra.

BECK, J. The Armour Fertilizer Works, a corporation, brought suit against G. B. Jones, alleging that the defendant was indebted to petitioner a stated sum of money upon certain promissory notes and written agreements set forth as exhibits. The defendant demurred to the petition generally, and to certain paragraphs of it. The demurrer was overruled, and the defendant excepted.

One of the notes sued on is dated May 13, 1910, and due De-

cember 1, 1910; the second note is dated May 1, 1911, and due November 15, 1911. The first note is for the sum of $8,531.35, and contains an absolute promise to pay that amount of money "as the amount due upon a consignment of fertilizers, which property is consigned to the undersigned [the defendant] under the express condition that the title to the said property or the proceeds thereof is to remain in the said payee and not to pass to the undersigned [the defendant] until the aforesaid sum shall be paid in full in accordance with the contract between the payee and the maker of this note." The remainder of the note contains a provision for the payment of interest and attorney's fees, and a waiver of homestead. In connection with this note is set forth a contract signed by the plaintiff and the defendant, which contains an agreement on the part of the plaintiff to consign to the defendant certain brands of fertilizers at stated prices per ton. It also contains stipulations that the defendant will be diligent in seeking business and creating a demand for the named brands of fertilizers, and that he shall take cash or notes in payment for all fertilizers sold by him for the plaintiff under this contract and turn over and pay the same to the plaintiff on or before May 1, 1910. The contract also contains the following clause: "You [the defendant] expressly guarantee prompt payment of all notes taken in settlement for time sales made by you; and as evidence of your guarantee that we [the plaintiff] shall receive full and prompt payment therefor, and for all said consigned goods sold by you for us upon time terms as evidenced by said notes [notes of farmers to whom fertilizers are sold] or otherwise, you agree to execute and deliver to us on May 1, 1910, next, or sooner if required, your negotiable promissory note or notes, upon our forms, for all fertilizers delivered hereunder and not settled for in cash at the time of the execution and delivery of said note or notes." Following this are stipulations as to discounts and deductions. Other clauses in the writing provide for the return to the defendant of the planters' notes for collection, which, together with the proceeds received from the collection of the same, are to be held in trust for and subject to the plaintiff's orders; and an agreement that when the amount due the plaintiff under the contract is fully paid, the plaintiff will surrender the defendant's "guaranty notes" and transfer to him all, if any, uncollected planters' notes. This contract was dated Jan-

uary 14, 1910. Another note for $1,999.20, dated May 1, 1911, and due November 15, 1911, executed by the defendant to the plaintiff, was also sued upon and attached; and in connection with this note was a contract substantially the same in terms as the one referred to above, dated January 9, 1911. A third note for $9,-934.99, dated May 23, 1911, and due December 1, 1911, and in terms and form, except as to amounts and dates, the same as the note first set forth, was also sued upon, and a copy attached. Also attached was a statement of credits upon the notes. Another contract is attached as an exhibit, dated May 15, 1912, containing an agreement between the plaintiff and the defendant. This paper recites that the defendant has for some time been acting as the agent of the plaintiff, making sales of fertilizers under a consignment contract, and at the same time giving his own notes "guaranteeing the payment of the farmers' notes." It also recites that the defendant owes the plaintiff "on the 1910 guaranty notes $2,347.25 principal, and on the 1911 guaranty notes the principal sum of $10,420.39, together with interest." Further, it recites that in order to secure this indebtedness the defendant, on December 12, 1911, executed a mortgage to one Merrick for the use and account of the plaintiff, and also to secure certain indebtedness to the plaintiff; and that the defendant, on April 29, 1912, transferred and assigned to Merrick a certain bond for title covering the same property as the mortgage. It is further recited in this contract that the defendant agrees to and does convey certain other property to the plaintiff to secure it in other indebtedness of the defendant to the plaintiff, arising from payments by the plaintiff for the defendant to other parties. This contract also provides for the selling of the properties conveyed by the defendant to the plaintiff, and for the application of the proceeds of the sale to the payment of the indebtedness of the former to the latter, which includes the notes sued upon.

It is insisted that the defendant, as to two of the notes sued upon, was a mere guarantor, not primarily liable for the payment of the sums for which the notes were given until after it was shown that the notes given by the planters for the fertilizers had not been paid. This contention is clearly without merit. While the notes and the contracts exhibited in connection therewith do use the terms "guaranty" and "guarantee," it by no means follows that

the maker of the notes was a mere guarantor. The notes themselves contain an absolute promise to pay. And besides this, after date of maturity of all the planters' notes which had been given for the fertilizers, the defendant executed a contract in which, together with certain agreements as to conveying property to secure his indebtedness to the plaintiff, there is an express recognition of the amounts due upon the notes sued upon as a debt of the defendant to the plaintiff. If the planters' notes which had been given for the fertilizers, and which, under the contracts touching the consignment of the fertilizers to the defendant, were returnable to him for the purpose of collection, had been paid and the amounts paid by the planters had been remitted to the plaintiff, that was a matter which should have been shown by the defendant himself in an answer; and if established by proof, the amount of credits upon the notes would have been increased. But the petition itself shows an indebtedness of the defendant to the plaintiff for which he is primarily liable, and the general demurrer was properly overruled. *Judgment affirmed. All the Justices concur.*

LUMPKIN and ATKINSON, JJ., concurring specially. We concur in the judgment, but not in what is said as to the notes, or in the idea that they and the original contracts, called agency contracts, alone show a right to recover against the defendant. These contracts carefully and distinctly negatived any idea of a purchase of the fertilizers by the defendant. They declared him to be an agent, and that the fertilizers were to be consigned to him for sale for the account of the Armour Fertilizer Works. He was to take cash or notes for all fertilizers sold by him, and turn over the same to the plaintiff on or before May 1, 1910 (using the contract of 1910 as typical of all of them). All notes were to be payable to the plaintiff's order, and to be drawn to mature "not later than the maturity date of your guaranty note," which was to be given. It was provided that "You expressly guarantee prompt payment of all notes taken in settlement for time sales made by you; and as evidence of your guarantee that we shall receive full and prompt payment thereof, and for all of said consigned goods sold by you for us upon time terms as evidenced by said notes or otherwise, you agree to execute and deliver to us on May 1, 1910, next, or sooner if required, your negotiable promissory note or notes, upon our forms, for all fertilizers delivered hereunder and not settled

for in cash at the time of the execution and delivery of said note or notes." The defendant was to be paid a commission. No fertilizers were to be used or taken by the defendant on his own account, "unless by special written permission from us." This contract was dated January 14, 1910.

It seems clear that when the petition set out such a contract, and a note dated May 1, 1910, and given by the defendant in pursuance thereof, it showed on its face a case of agency, with a guaranty of prompt payment of notes of the purchasers of the fertilizers, and the giving of a note by the defendant as a part of, or evidence of, such guaranty. When the plaintiff set out in his petition the contract and note, this would not alone suffice to show liability on the part of the guarantor. Under such a guaranty of payment, it may not be necessary to allege and prove inability of the purchasers of the fertilizers to pay their notes, but at least failure of prompt payment would be a necessary part of the allegation and proof. But when long after the dates stated as those of the maturity of such notes, and presumably after the notes of the purchasers were past due (as they were not to be made due later than the guaranty notes), the parties came together and entered into a written contract in which they agreed that the defendant was "owing" to the plaintiff certain stated sums on the guaranty notes respectively, and made provision in regard to securing "this indebtedness," and the petition had attached to it as exhibits not only the original contracts and guaranty notes, but also the last-mentioned contract, a case of indebtedness to the amounts so admitted was sufficiently set forth to withstand a demurrer general in character.